# EXHIBIT 1

**In the Superior Court of the State of Arizona**

**In and for the County of** _MARICOPA_

Case Number _CV 2024-009759_

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney _MARTIN BIHN_

Attorney Bar Number _14338_

Is Interpreter Needed? ☐ Yes ☒ No

If yes, what language(s):

_____

_____

CLERK OF THE SUPERIOR COURT
FILED

APR 2 4 2024   4:08 pm

D. Araujo, Deputy

---

Plaintiff's Name(s): (List all)   Plaintiff's Address:   Phone #:   Email Address:

— _DAVID YACOUB_

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

_MAYO CLINIC_    _DENISE DUPRAS_

_RYAN CHADHA_

_KRYSTAL RENSZEL_

(List additional Defendants on page two and/or attach a separate sheet)

## RULE 26.2 DISCOVERY TIER OR MONETARY RELIEF CLAIMED:

**IMPORTANT: Any case category that has an asterisk (*) MUST have a dollar amount claimed or Tier selected.** State the monetary amount in controversy or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.

☐ Amount Claimed $_____    ☐ Tier 1   ☐ Tier 2   ☒ Tier 3

## NATURE OF ACTION

Place an "X" next to the **one** case category that most accurately describes your primary case. Any case category that has an asterisk (*) MUST have a dollar amount claimed or Tier selected as indicated above.

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury*
☐ 102 Property Damage*
☐ 103 Wrongful Death*

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence*
☐ 112 Product Liability – Asbestos*
☐ 112 Product Liability – Tobacco*
☐ 112 Product Liability – Toxic/Other*
☐ 113 Intentional Tort*

Case No: _____

☐114 Property Damage*
☐115 Legal Malpractice*
☐115 Malpractice – Other professional*
☐117 Premises Liability*
☒118 Slander/Libel/Defamation*
☐119 Recovery of Damages under A.R.S. §12-514* (Please provide Plaintiff DOB ___/___/_____)
☐ 116 Other (Specify) _____*

**120 MEDICAL MALPRACTICE:**

☐121 Physician M.D.*     ☐123 Hospital*
☐122 Physician D.O*      ☐124 Other*

**130 & 197 CONTRACTS:**

☐131 Account (Open or Stated)*
☐132 Promissory Note*
☐133 Foreclosure*
☐138 Buyer-Plaintiff*
☐139 Fraud*
☒134 Other Contract (e.g., Breach of Contract)*
☐135 Excess Proceeds-Sale*
☐ Construction Defects (Residential/Commercial)*
   ☐136 Six to Nineteen Structures*
   ☐137 Twenty or More Structures*
☐197 Credit Card Debt (Maricopa County Filings Only)*

**145 & 150-199 OTHER CIVIL CASE TYPES:**

☐156 Eminent Domain/Condemnation*
☐151 Eviction Actions (Forcible and Special Detainers)*
☐152 Change of Name
☐153 Transcript of Judgment
☐154 Foreign Judgment

☐158 Quiet Title*
☐160 Forfeiture*
☐175 Election Challenge
☐179 NCC-Employer Sanction Action (A.R.S. §23-212)*
☐180 Injunction against Workplace Harassment
☐181 Injunction against Harassment
☐182 Civil Penalty
☐186 Water Rights (Not General Stream Adjudication)*
☐187 Real Property *
☐145 Special Action
☐194 Immigration Enforcement Challenge (A.R.S. §§1-501, 1-502, 11-1051)
☐199 Expungement
☐202 Out of State Restoration of Civil Rights
☐201 Seal Criminal Case Records (A.R.S. §13-911)

**144 & 150-199 UNCLASSIFIED CIVIL:**

☐Administrative Review (See Lower Court Appeals cover sheet in Maricopa)
☐150 Tax Appeal (All other tax matters must be filed in the AZ Tax Court)
☐155 Declaratory Judgment
☐157 Habeas Corpus
☐184 Landlord Tenant Dispute – Other*
☐190 Declaration of Factual Innocence (A.R.S. §12-771)
☐191 Declaration of Factual Improper Party Status
☐193 Vulnerable Adult (A.R.S. §46-451)*
☐165 Tribal Judgment
☐167 Structured Settlement (A.R.S. §12-2901)
☐169 Attorney Conservatorships (State Bar)
☐170 Unauthorized Practice of Law (State Bar)
☐171 Out-of-State Deposition for Foreign Jurisdiction

Case No: _____

☐172 Secure Attendance of Prisoner

☐173 Assurance of Discontinuance

☐174 In-State Deposition for Foreign
   Jurisdiction

☐176 Eminent Domain– Light Rail Only*

☐177 Interpleader– Automobile Only*

☐178 Delayed Birth Certificate (A.R.S. §36-
   333.03)

☐183 Employment Dispute – Discrimination*

☐185 Employment Dispute – Other*

☐198 Verified Rule 27(a) Petition*

☐196 Verified Rule 45.2 Petition

☐195(a) Amendment of Marriage License
   (Maricopa County Filings Only)

☐195(b) Amendment of Birth Certificate

☐200 Application/Motion Objecting to Foreign
   Subpoena

☐163 Other* _____
                    (Specify)

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order  ☐ Provisional Remedy   ☐ OSC   ☐ Election Challenge
☐ Employer Sanction            ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of
   this case to the Commercial Court. More information on the Commercial Court, including the most
   recent forms, are available on the Court's website at:
   https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

**TAYLOR & GOMEZ, LLP**
Benjamin Taylor, SBN: 023868
2600 North 44th Street, Suite B-101
Phoenix, Arizona 85008
Phone: 602-403-0212 Fax: 602-957-3257
E-mail: dg@taylorgomezlaw.com

**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com

**Law Office Of Michael Eskander, P.L.C.**
Michael S. Eskander, J.D., L.L.M.
(480) 491-4400
1921 South Alma School
Suite 310
Mesa, Arizona 85210
michael@eskanderlaw.com
Counsel for Plaintiff

CLERK OF THE SUPERIOR COURT
FILED
APR 2 4 2024 @ 4:09 pm
D. Araujo, Deputy

## SUPERIOR COURT OF THE STATE OF ARIZONA

### IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| ▇▇▇▇▇▇▇▇▇<br>John Doe        Plaintiff,<br><br>vs.<br><br>Mayo Clinic, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine; Krystal Renszel; Denise Dupras; and Ryan Chadha<br><br>Defendant. | No. CV 2024-009759<br><br>**COMPLAINT AND JURY DEMAND**<br><br>**(TIER 3)** |

Plaintiff for his complaint against defendants alleges as follows:

1.      Plaintiff is a second year medical student at Mayo Clinic Alix School of Medicine.  Plaintiff is an African- American man.    Defendants falsely told an oversight committee that plaintiff was unable to complete a course and therefore progress in medical school for a class that he had, in fact, finished and passed with flying colors.  Defendants also falsely told the committee that plaintiff was under criminal investigation.  Defendant school, through its committee, then violated its own policies by placing plaintiff on administrative leave.  Defendant school had its security remove plaintiff from the campus. Defendant school cancelled plaintiff's credentials, computer access, banned him from classes and any access to the school. Defendant school did not subject similarly situated white students to the same punitive measures.

2.      Plaintiff ▮▮▮▮▮▮▮▮ Plaintiff") is a resident of Los Angeles, California.

3.      Defendant Mayo Clinic d/b/a Mayo Clinic Alix School of Medicine ("MCASOM") is a Minnesota non-profit corporation duly authorized and conducting business in Maricopa County, Arizona.

4.      Defendant Krystal Renszel ("Renszel") is, upon information and belief, a resident of Maricopa County, Arizona.

5.      Defendant Denise Dupras ("Dupras") is, upon information and belief, a Minnesota resident who has participated in causing events in Maricopa County, Arizona, giving rise to this action.

6.      Defendant Ryan Chadha ("Chadha") is, upon information and belief, a Florida resident who has participated in causing events in Maricopa County, Arizona, giving rise to this action.

2

7.      Defendants Renszel, Dupras and Chadha were, at all material times, employees of MCASOM, and acting the course and scope of their employment.

8.      Upon information and belief MCASOM is responsible for individual defendants' conduct under *respondeat superior*.

9.      Defendants have caused events in Maricopa County out of which this matter arises.

10.     Jurisdiction and venue are proper with the Arizona Superior Court for Maricopa County, Arizona.

Factual Background

11.     Plaintiff is, identifies as, and upon information and belief, is perceived as an African-American man.

12.     Plaintiff is a first generation African-American of Ethiopian and Egyptian descent.

13.     Plaintiff is currently a second year medical student at MCASOM.

14.     On August 6, 2023, Plaintiff was out with a friend in Scottsdale.

15.     Plaintiff was assaulted and robbed.

16.     Responding police arrested several people including Plaintiff.

17.     Plaintiff was released the next morning.

18.     After his release, Plaintiff sought medical treatment and was diagnosed with a concussion.

19.     Plaintiff was not cited by the police.

3

20.     Authorities determined that Plaintiff was the victim and not a participant and no charges were ever filed against him.

21.     On August 8, 2022, MCASOM advised Plaintiff that it had been contacted by the police who sought to confirm Plaintiff's enrollment.

22.     That same day Plaintiff responded via email and detailed the incident in accordance with MCASOM policy.

23.     On August 23, 2022 MCASOM asked Plaintiff to obtain the police report of the incident. That was police report was principally about

24.     Plaintiff hired a lawyer to make a public records request for the report. The lawyer also contacted MCASOM and advised that he was obtaining the police report but it often took 30 days to obtain a report through a public records request.

25.     On September 12, 2022 Plaintiff received a notice that MCASOM was initiating an investigation of the incident.

26.     On September 27, 2022 Plaintiff was interviewed by MCASOM.

27.     That day, Plaintiff provided MCASOM with the police report detailing that Plaintiff had been assaulted and robbed and treatment records of his post arrest medical care.

28.     MCASOM has a committee to oversee and discipline its medical students called Student Promotion and Assessment Review Committee ("SPARC").

29.     The SPARC has over 20 MCASOM instructors who sit as members.

30.     In early November 2022 the SPARC committee served Plaintiff with a notice placing him on Formal Non-Academic Warning because of the August incident.     The

4

upshot of the notice was the requirement that Plaintiff violate no MCASOM policy for a year or face further disciplinary action.

Unwarranted Action Against Plaintiff

31.     In December 2022, Plaintiff and his classmates received an email from MCASOM advising them that for the April rotation through Valleywise Health, they would need to submit a confidentiality agreement, a valid ID and obtain an Arizona Department of Public Safety ("AZDPS") fingerprint clearance card.

32.     MCASOM told students that a fingerprint clearance card could take 4 to 6 weeks.

33.     Plaintiff's Intro to Psychiatry rotation which was scheduled to begin on April 10, 2023 included a few patient interviews at Valleywise Health.

34.     Plaintiff submitted the fingerprint clearance card to DPS on February 20, 2023.

35.     On March 8, 2023 MCASOM sent an email to Plaintiff asking about the status of his documents.

36.     Plaintiff responded by providing his ID and confidentiality documents and told MCASOM that he was still waiting for the fingerprint card.

37.     MCASOM replied to Plaintiff, "No problem. Thank you for the update!" and indicated that it would check up on the status in a few weeks.

38.     By March 30, 2023, Plaintiff had another follow-up email exchange with MCASOM.

39.     Plaintiff still had not received his fingerprint card.

40.     MCASOM responded that it was monitoring the situation and would reach out if there were further delays.

41.     MCASOM discovered that numerous students in the Intro to Psychiatry course lacked fingerprint card approvals due to processing delays at AZDPS.

42.     MCASOM's Intro to Psychiatry instructor made arrangements for at least five students (including Plaintiff) who lacked fingerprint cards to participate in patient interviews at Mayo where there was no requirement for fingerprint card clearance before conducting interviews.

43.     Plaintiff passed the course and received a stellar interview evaluation.

44.     On April 24, 2023 Plaintiff was summoned to a meeting with SPARC officials including defendants Renszel, Dupras and Chadha.

45.     Plaintiff was directed to bring his Mayo Clinic issued badge, ID and laptop.

46.     Plaintiff appeared at the meeting and was served with a letter placing him on administrative leave.

47.     Plaintiff's badge, ID and laptop were confiscated, he was banned from classes and his access to Mayo campus was terminated. MCASOM had its security personnel escort Plaintiff off the campus premises in a deliberately public fashion in front bystanders and peers. Plaintiff was publicly humiliated.

48.     Plaintiff is not aware of any other MCASOM student being escorted from the premises by security personnel.

49.     Upon information and belief, no MCASOM policy that is applicable to medical students authorizes administrative leave as discipline for students.

50.     None of the policies MCASOM cited in its letter to Plaintiff authorized it to impose administrative leave.

51.     The letter was signed by defendants Renszel, Dupras and Chadha.

52.     The letter cited the following deficiencies as grounds for administrative leave:

OBSERVED DEFICIENCIES:

A.      On December 27, 2022, a request was made to submit your fingerprints for background check for Intro to Psychiatry rotation. Fingerprints were not submitted until February 20, 2023 resulting in a failure to obtain fingerprint clearance for Intro to Psychiatry rotation in a timely manner.

B.      Inability to complete Intro to Psychiatry rotation and therefore progress in MCASOM curriculum.

C.      Without fingerprint/background clearance, this will impact your ability to take part in the upcoming lottery for third year clerkships.

D.      Deficiencies above are noted in the setting of an apparent active police investigation and your current Formal Non-Academic Warning status.

53.     Plaintiff addressed the allegations and told the SPARC officials and defendants that:

1)  The processing of his fingerprint card had been delayed at AZDPS;

2)  Alternative arrangements were made and he had, in fact, completed the Intro to Psychiatry course;

3)  He had, in fact, just received his fingerprint card in the mail and could produce it to SPARC; and

4)  No ongoing or active police investigation existed, he had not been cited or charged and the only update he had was that the belongings stolen from him had been returned.

54.    After Plaintiff's explanation, SPARC chair, defendant Dupras, told Plaintiff, "it doesn't change a thing" as "the decision had already been made" and "it was a unanimous SPARC decision."

55.    Plaintiff's Mayo email and course registration were immediately terminated and security was summoned to escort him from the building.

56.    Within four hours of the meeting, Plaintiff's lawyer provided MCASOM with Plaintiff's fingerprint card, confirmation that Plaintiff was a victim of a crime and that no charges had ever been filed against him, and that the criminal case was closed.

57.    Upon information and belief other MCASOM medical students have been arrested, charged, and even convicted of serious crimes were allowed to graduate.

58.    Upon information and belief these individuals were not African-American and their disciplinary consequences did not rise to the level of those MCASOM took against Plaintiff.

59.    Although, within hours of meeting with Plaintiff, MCASOM had the information to correct and reverse its decision, it did not agree to return him to campus for 16 weeks.

60.    Plaintiff was wrongfully and intentionally taken out of his coursework.

61.    This absence from academic activities delayed his progression through the medical curriculum.

62.    The 16 week delay caused him to fall behind his peers.   He missed out on critical learning opportunities, collaborative projects, and completing his board exam the USMLE Step I.

8

63. This disruption in his education has necessitated additional efforts to catch up, increasing his workload and stress levels as he strives to meet the same benchmarks as his classmates without the benefit of consistent, sequential learning experiences.

64. As a result of defendants' conduct Plaintiff has suffered and continues to suffer emotional distress, humiliation, inconvenience, and anxiety.

65. Defendant's false and defamatory statements impaired Plaintiff's reputation and standing within the Mayo Clinic medical community.

COUNT ONE<br>FALSE LIGHT

66. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

67. Upon information and belief, SPARC committee chair defendant Dupras, vice chair Renszel and vice chair Chadha provided information to 21 MCASOM physicians sitting on the SPARC committee that placed plaintiff in a false light.

68. This information placing plaintiff in a false light is set forth in the April 24, 2023 letter signed by each of the defendants.

69. Defendants falsely implied that plaintiff was responsible for the delay in obtaining a fingerprint clearance card.

70. Defendants falsely asserted that plaintiff was not able to complete the Intro to Psychiatry course.

71. Defendants also falsely asserted that plaintiff's actions took place in the setting of an apparent active police investigation.

72.    These statements, in combination and/or individually, placed plaintiff in a false light in to 21 MCASOM physicians who will be evaluating plaintiff through medical school and guiding him in the future.

73.    The false suggestions that plaintiff, as a future physician, was responsible for a failing to obtain fingerprint clearance, failed to complete an introductory course and remained under apparent police investigation is highly offensive to a reasonable person.

74.    Defendants knew and/or acted in reckless disregard as to the falsity of the matter and the false light in which plaintiff was placed.

75.    As a result of defendants' conduct plaintiff has been damaged.

COUNT TWO
DEFAMATION

76.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

77.    Upon information and belief, SPARC committee chair defendant Dupras, vice chair defendant Renszel and vice chair defendant Chadha made false and defamatory statements about plaintiff and published them to 21 MCASOM physicians sitting on the SPARC committee.

78.    Upon information and belief defendants knew the statements were false, acted in reckless disregard of whether the statements were true or false, or negligently failed to ascertain the truth or falsity of the statements.

79.    The false statements are set forth in the April 24, 2023 letter to plaintiff that each of defendants signed.

80.     The false statements are that plaintiff was responsible for a failing to obtain fingerprint clearance, failed to complete an introductory course and remained under apparent police investigation.

81.     As a result of defendants' conduct plaintiff has been damaged.

## COUNT THREE
## STATE LAW PUNITIVE DAMAGES

82.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

83.     In placing plaintiff in a false light as alleged in Count One and defaming plaintiff in Count Two defendants, and each of them, engaged in conduct that was outrageous, oppressive or intolerable, and created a substantial risk of tremendous harm, thereby evidencing a conscious and deliberate disregard of the interests and rights of plaintiff.

84.     As such plaintiff is entitled to an award of punitive damages in an amount sufficient to deter defendants from such conduct in the future.

## COUNT FOUR
## TITLE VI
## Intentional Discrimination/Hostile Environment
## (Defendant MCASOM)

85.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

86.     Defendant MCASOM is a recipient of federal financial assistance.

87.     As a recipient of federal financial assistance, MCASOM may not take action motivated by race, color or national origin discrimination including excluding individuals, denying benefits of subjecting individuals to segregation or separate treatment.

88.     Plaintiff is African-American of Egyptian and Ethiopian national origin and is a member of a protected class.

89.     Upon information and belief Defendant intentionally discriminated against plaintiff based upon his race and national origin.

90.     Upon information and belief, similarly situated non-African Americans were not singled out for discipline even though they, like plaintiff, were unable to obtain fingerprint card clearance.

91.     Defendant has no legitimate non-discriminatory reason or basis for imposing administrative leave on plaintiff and removing him from the campus.

92.     Defendant's racial harassment created a racially hostile environment in that it was sufficiently severe that would interfere with the educational program of a reasonable person of the same age and race of plaintiff.

93.     Defendant, at multiple points, had notice of the problem and failed to adequately redress the racially hostile environment.

94.     As a result of defendant's actions plaintiff has been damaged.

## COUNT V
### BREACH OF CONTRACT
### (Defendant MCASOM)

95.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

96.     Plaintiff paid MCASOM sums of money for this education, and in return, MCASOM contracted to provide Plaintiff with access to its medical degree program.

97.    The relationship between the parties is contractual in nature, and each party owes the other certain duties, some of which can be found in MCASOM's written policies, acceptance letters, enrollment documents and student handbooks.

98.    MCASOM breached it contract with plaintiff in various ways including but not limited to: (1) employing a discipline not authorized by the contract to summarily remove plaintiff from the school and placing him on administrative leave and, (2) failing to afford plaintiff contractual due process rights to challenge the defendant's improper action.

99.    As a result of that breach, Plaintiff has been harmed, suffering direct and consequential damages.

## COUNT VI
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (Against MCASOM)

100.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

101.    Every contract contains within it an implied covenant of good faith and fair dealing.

102.    MCASOM breached that covenant by exceeding the limits of reasonableness as alleged above, thereby exercising its contractually vested discretion in a manner that thwarted Plaintiff's reasonable expectations as to the essence of the contract.

103.    As a direct and proximate result of that breach Plaintiff had been damaged.

## COUNT SEVEN
## 42 U.S.C. § 1981
## EQUAL RIGHTS UNDER THE LAW – RACIAL DISCRIMINATION
### (Against MCASOM)

104.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

13

105.   42 U.S.C. § 1981 in relevant part requires that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

106.   42 U.S.C. § 1981 protects the African American student's "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

107.   MCASOM's policies establish the parties' contractual rights.

108.   MCASOM's policies represent a contractual commitment to Plaintiffs.

109.   As an African American student, Plaintiff is a member of a protected class.

110.   Plaintiff is qualified to attend MCASOM as a medical student.

111.   Plaintiff suffered adverse actions in that he was deprived of various contractual rights, including the right to not be summarily ejected from classes and placed on administrative leave.

112.   Upon information and belief defendant did not subject similarly situated non-minority students to adverse actions.

113.   Upon information and belief at least one non-minority student was found guilty of multiple DUI's during his tenure at MCASOM and was not summarily ejected from classes and placed on administrative leave. This student was allowed to graduate.

114.   Upon information and belief other non-minority students in Plaintiff's class also had not received their AZDPS fingerprint cards before the course started.

115.    Upon information and belief, none of the other non-minority students were even disciplined by MCASCOM.

116.    Plaintiff's race was a "but for" cause of the adverse action taken against him.

117.    Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, plaintiff has been damaged and his career prospects, earning potential, and reputation have been severely harmed, and he may have suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

118.    Thus, Plaintiff is entitled to all legal and equitable remedies available including all applicable damages, prejudgment interest, attorneys' fees pursuant 42 USC sec 1988 and on any other applicable basis, costs, and other compensation in an amount to be determined upon the trial of this action.

119.    Defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  As a result plaintiff is entitled to punitive damages.


JURY DEMAND

1.    Plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff requests that this Court enter judgment against defendants as follows:

A.     Declaring that Defendant MCASOM's conduct violated Title VI of the Civil Rights Act of 1964, and 42 USC sec 1981;

B.     Ordering defendant to remove all evidence of the administrative leave from his academic record;

C.     Awarding Plaintiff compensatory damages in an amount to be proven at trial;

D.     Awarding Plaintiff punitive damages in an amount sufficient to deter defendants from such conduct in the future;

E.     Awarding Plaintiff his attorney's fees and costs pursuant to 42 USC 1988, ARS 12-341.01 and/or under any other applicable provision; and

F.     Granting such other and further relief as is just and proper.

Dated this 22nd day of April 2024.

BIHN & McDANIEL, P.L.C.

Martin A. Bihn
*Co-Counsel for Plaintiff*

**TAYLOR & GOMEZ, LLP**

/s/ Benjamin Taylor

_____
Benjamin Taylor
*Co-Counsel for Plaintiff*

**Law Office Of Michael Eskander, P.L.C.**

/s/ Michael S. Eskander

_____
Michael S. Eskander
*Co-Counsel for Plaintiff*

CLERK OF THE SUPERIOR COURT
FILED

APR 2 4 2024   4:09 pm
D. Araujo, Deputy

Martin Bihn 14338
Bihn & McDaniel
2600 N Central Ave
Ste 1775
Phoenix Az 85004
602-248-9779
mbihn@phxlegal.com   CV 2024-009759

David Yacoub
        Plaintiff

Mayo Clinic D/B/A Alix School
of Medicine; Denise Dupaas
Ryan Chadha, Krystal Rensel

CERTIFICATE
of
COMPULSORY
ARBITRATION

        Counsel certifies that he is aware
of the applicable rules and certifies
This case is NOT subject to
Compulsory Arbitration

        Martin Bihn

1  **TAYLOR & GOMEZ, LLP**
2  Benjamin Taylor, SBN: 023868
   2600 North 44th Street, Suite B-101
3  Phoenix, Arizona 85008
   Phone: 602-403-0212 Fax: 602-957-3257
4  E-mail: dg@taylorgomezlaw.com
5
6  **BIHN & McDANIEL, P.L.C.**
   2600 N. Central Ave, Suite 1775
7  Phoenix, Arizona 85004
   (602) 248 9779
8  Martin A. Bihn (014338)
   mbihn@phxlegal.com
9
10 **Law Office Of Michael Eskander, P.L.C.**
   Michael S. Eskander, J.D., L.L.M.
11 (480) 491-4400
12 1921 South Alma School
   Suite 310
13 Mesa, Arizona 85210
   michael@eskanderlaw.com
14 Counsel for Plaintiff

CLERK OF THE SUPERIOR COURT
FILED
APR 2 4 2024  @ 4:09 pm
D. Araujo, Deputy

15           **SUPERIOR COURT OF THE STATE OF ARIZONA**

16             **IN AND FOR THE COUNTY OF MARICOPA**

17
18                                              No. CV 2024-009759
19    John Doe        Plaintiff,
                                                **COMPLAINT AND JURY DEMAND**
20    vs.

21    Mayo Clinic, a foreign non-profit           **(TIER 3)**
22    corporation d/b/a Mayo Clinic Alix
      School of Medicine; Krystal Renszel;
23    Denise Dupras; and Ryan Chadha

24              Defendant.
25

26       Plaintiff for his complaint against defendants alleges as follows:

27

1.     Plaintiff is a second year medical student at Mayo Clinic Alix School of Medicine. Plaintiff is an African- American man.     Defendants falsely told an oversight committee that plaintiff was unable to complete a course and therefore progress in medical school for a class that he had, in fact, finished and passed with flying colors. Defendants also falsely told the committee that plaintiff was under criminal investigation. Defendant school, through its committee, then violated its own policies by placing plaintiff on administrative leave. Defendant school had its security remove plaintiff from the campus. Defendant school cancelled plaintiff's credentials, computer access, banned him from classes and any access to the school. Defendant school did not subject similarly situated white students to the same punitive measures.

2.     Plaintiff ▮▮▮▮▮▮▮▮ Plaintiff") is a resident of Los Angeles, California.

3.     Defendant Mayo Clinic d/b/a Mayo Clinic Alix School of Medicine ("MCASOM") is a Minnesota non-profit corporation duly authorized and conducting business in Maricopa County, Arizona.

4.     Defendant Krystal Renszel ("Renszel") is, upon information and belief, a resident of Maricopa County, Arizona.

5.     Defendant Denise Dupras ("Dupras") is, upon information and belief, a Minnesota resident who has participated in causing events in Maricopa County, Arizona, giving rise to this action.

6.     Defendant Ryan Chadha ("Chadha") is, upon information and belief, a Florida resident who has participated in causing events in Maricopa County, Arizona, giving rise to this action.

2

7.     Defendants Renszel, Dupras and Chadha were, at all material times, employees of MCASOM, and acting the course and scope of their employment.

8.     Upon information and belief MCASOM is responsible for individual defendants' conduct under *respondeat superior*.

9.     Defendants have caused events in Maricopa County out of which this matter arises.

10.    Jurisdiction and venue are proper with the Arizona Superior Court for Maricopa County, Arizona.

Factual Background

11.    Plaintiff is, identifies as, and upon information and belief, is perceived as an African-American man.

12.    Plaintiff is a first generation African-American of Ethiopian and Egyptian descent.

13.    Plaintiff is currently a second year medical student at MCASOM.

14.    On August 6, 2023, Plaintiff was out with a friend in Scottsdale.

15.    Plaintiff was assaulted and robbed.

16.    Responding police arrested several people including Plaintiff.

17.    Plaintiff was released the next morning.

18.    After his release, Plaintiff sought medical treatment and was diagnosed with a concussion.

19.    Plaintiff was not cited by the police.

20.     Authorities determined that Plaintiff was the victim and not a participant and no charges were ever filed against him.

21.     On August 8, 2022, MCASOM advised Plaintiff that it had been contacted by the police who sought to confirm Plaintiff's enrollment.

22.     That same day Plaintiff responded via email and detailed the incident in accordance with MCASOM policy.

23.     On August 23, 2022 MCASOM asked Plaintiff to obtain the police report of the incident.  That was police report was principally about

24.     Plaintiff hired a lawyer to make a public records request for the report.  The lawyer also contacted MCASOM and advised that he was obtaining the police report but it often took 30 days to obtain a report through a public records request.

25.     On September 12, 2022 Plaintiff received a notice that MCASOM was initiating an investigation of the incident.

26.     On September 27, 2022 Plaintiff was interviewed by MCASOM.

27.     That day, Plaintiff provided MCASOM with the police report detailing that Plaintiff had been assaulted and robbed and treatment records of his post arrest medical care.

28.     MCASOM has a committee to oversee and discipline its medical students called Student Promotion and Assessment Review Committee ("SPARC").

29.     The SPARC has over 20 MCASOM instructors who sit as members.

30.     In early November 2022 the SPARC committee served Plaintiff with a notice placing him on Formal Non-Academic Warning because of the August incident.    The

upshot of the notice was the requirement that Plaintiff violate no MCASOM policy for a year or face further disciplinary action.

Unwarranted Action Against Plaintiff

31.     In December 2022, Plaintiff and his classmates received an email from MCASOM advising them that for the April rotation through Valleywise Health, they would need to submit a confidentiality agreement, a valid ID and obtain an Arizona Department of Public Safety ("AZDPS") fingerprint clearance card.

32.     MCASOM told students that a fingerprint clearance card could take 4 to 6 weeks.

33.     Plaintiff's Intro to Psychiatry rotation which was scheduled to begin on April 10, 2023 included a few patient interviews at Valleywise Health.

34.     Plaintiff submitted the fingerprint clearance card to DPS on February 20, 2023.

35.     On March 8, 2023 MCASOM sent an email to Plaintiff asking about the status of his documents.

36.     Plaintiff responded by providing his ID and confidentiality documents and told MCASOM that he was still waiting for the fingerprint card.

37.     MCASOM replied to Plaintiff, "No problem. Thank you for the update!" and indicated that it would check up on the status in a few weeks.

38.     By March 30, 2023, Plaintiff had another follow-up email exchange with MCASOM.

39.     Plaintiff still had not received his fingerprint card.

5

40.     MCASOM responded that it was monitoring the situation and would reach out if there were further delays.

41.     MCASOM discovered that numerous students in the Intro to Psychiatry course lacked fingerprint card approvals due to processing delays at AZDPS.

42.     MCASOM's Intro to Psychiatry instructor made arrangements for at least five students (including Plaintiff) who lacked fingerprint cards to participate in patient interviews at Mayo where there was no requirement for fingerprint card clearance before conducting interviews.

43.     Plaintiff passed the course and received a stellar interview evaluation.

44.     On April 24, 2023 Plaintiff was summoned to a meeting with SPARC officials including defendants Renszel, Dupras and Chadha.

45.     Plaintiff was directed to bring his Mayo Clinic issued badge, ID and laptop.

46.     Plaintiff appeared at the meeting and was served with a letter placing him on administrative leave.

47.     Plaintiff's badge, ID and laptop were confiscated, he was banned from classes and his access to Mayo campus was terminated. MCASOM had its security personnel escort Plaintiff off the campus premises in a deliberately public fashion in front bystanders and peers. Plaintiff was publicly humiliated.

48.     Plaintiff is not aware of any other MCASOM student being escorted from the premises by security personnel.

49.     Upon information and belief, no MCASOM policy that is applicable to medical students authorizes administrative leave as discipline for students.

50.     None of the policies MCASOM cited in its letter to Plaintiff authorized it to impose administrative leave.

51.     The letter was signed by defendants Renszel, Dupras and Chadha.

52.     The letter cited the following deficiencies as grounds for administrative leave:

OBSERVED DEFICIENCIES:

A.      On December 27, 2022, a request was made to submit your fingerprints for background check for Intro to Psychiatry rotation. Fingerprints were not submitted until February 20, 2023 resulting in a failure to obtain fingerprint clearance for Intro to Psychiatry rotation in a timely manner.

B.      Inability to complete Intro to Psychiatry rotation and therefore progress in MCASOM curriculum.

C.      Without fingerprint/background clearance, this will impact your ability to take part in the upcoming lottery for third year clerkships.

D.      Deficiencies above are noted in the setting of an apparent active police investigation and your current Formal Non-Academic Warning status.

53.     Plaintiff addressed the allegations and told the SPARC officials and defendants that:

1)  The processing of his fingerprint card had been delayed at AZDPS;

2)  Alternative arrangements were made and he had, in fact, completed the Intro to Psychiatry course;

3)  He had, in fact, just received his fingerprint card in the mail and could produce it to SPARC; and

4)  No ongoing or active police investigation existed, he had not been cited or charged and the only update he had was that the belongings stolen from him had been returned.

54.     After Plaintiff's explanation, SPARC chair, defendant Dupras, told Plaintiff, "it doesn't change a thing" as "the decision had already been made" and "it was a unanimous SPARC decision."

55.     Plaintiff's Mayo email and course registration were immediately terminated and security was summoned to escort him from the building.

56.     Within four hours of the meeting, Plaintiff's lawyer provided MCASOM with Plaintiff's fingerprint card, confirmation that Plaintiff was a victim of a crime and that no charges had ever been filed against him, and that the criminal case was closed.

57.     Upon information and belief other MCASOM medical students have been arrested, charged, and even convicted of serious crimes were allowed to graduate.

58.     Upon information and belief these individuals were not African-American and their disciplinary consequences did not rise to the level of those MCASOM took against Plaintiff.

59.     Although, within hours of meeting with Plaintiff, MCASOM had the information to correct and reverse its decision, it did not agree to return him to campus for 16 weeks.

60.     Plaintiff was wrongfully and intentionally taken out of his coursework.

61.     This absence from academic activities delayed his progression through the medical curriculum.

62.     The 16 week delay caused him to fall behind his peers.  He missed out on critical learning opportunities, collaborative projects, and completing his board exam the USMLE Step I.

8

63.     This disruption in his education has necessitated additional efforts to catch up, increasing his workload and stress levels as he strives to meet the same benchmarks as his classmates without the benefit of consistent, sequential learning experiences.

64.     As a result of defendants' conduct Plaintiff has suffered and continues to suffer emotional distress, humiliation, inconvenience, and anxiety.

65.     Defendant's false and defamatory statements impaired Plaintiff's reputation and standing within the Mayo Clinic medical community.

COUNT ONE
FALSE LIGHT

66.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

67.     Upon information and belief, SPARC committee chair defendant Dupras, vice chair Renszel and vice chair Chadha provided information to 21 MCASOM physicians sitting on the SPARC committee that placed plaintiff in a false light.

68.     This information placing plaintiff in a false light is set forth in the April 24, 2023 letter signed by each of the defendants.

69.     Defendants falsely implied that plaintiff was responsible for the delay in obtaining a fingerprint clearance card.

70.     Defendants falsely asserted that plaintiff was not able to complete the Intro to Psychiatry course.

71.     Defendants also falsely asserted that plaintiff's actions took place in the setting of an apparent active police investigation.

9

72.     These statements, in combination and/or individually, placed plaintiff in a false light in to 21 MCASOM physicians who will be evaluating plaintiff through medical school and guiding him in the future.

73.     The false suggestions that plaintiff, as a future physician, was responsible for a failing to obtain fingerprint clearance, failed to complete an introductory course and remained under apparent police investigation is highly offensive to a reasonable person.

74.     Defendants knew and/or acted in reckless disregard as to the falsity of the matter and the false light in which plaintiff was placed.

75.     As a result of defendants' conduct plaintiff has been damaged.

## COUNT TWO
## DEFAMATION

76.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

77.     Upon information and belief, SPARC committee chair defendant Dupras, vice chair defendant Renszel and vice chair defendant Chadha made false and defamatory statements about plaintiff and published them to 21 MCASOM physicians sitting on the SPARC committee.

78.     Upon information and belief defendants knew the statements were false, acted in reckless disregard of whether the statements were true or false, or negligently failed to ascertain the truth or falsity of the statements.

79.     The false statements are set forth in the April 24, 2023 letter to plaintiff that each of defendants signed.

80.     The false statements are that plaintiff was responsible for a failing to obtain fingerprint clearance, failed to complete an introductory course and remained under apparent police investigation.

81.     As a result of defendants' conduct plaintiff has been damaged.

## COUNT THREE
### STATE LAW PUNITIVE DAMAGES

82.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

83.     In placing plaintiff in a false light as alleged in Count One and defaming plaintiff in Count Two defendants, and each of them, engaged in conduct that was outrageous, oppressive or intolerable, and created a substantial risk of tremendous harm, thereby evidencing a conscious and deliberate disregard of the interests and rights of plaintiff.

84.     As such plaintiff is entitled to an award of punitive damages in an amount sufficient to deter defendants from such conduct in the future.

## COUNT FOUR
### TITLE VI
### Intentional Discrimination/Hostile Environment
### (Defendant MCASOM)

85.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

86.     Defendant MCASOM is a recipient of federal financial assistance.

87.     As a recipient of federal financial assistance, MCASOM may not take action motivated by race, color or national origin discrimination including excluding individuals, denying benefits of subjecting individuals to segregation or separate treatment.

88.     Plaintiff is African-American of Egyptian and Ethiopian national origin and is a member of a protected class.

89.     Upon information and belief Defendant intentionally discriminated against plaintiff based upon his race and national origin.

90.     Upon information and belief, similarly situated non-African Americans were not singled out for discipline even though they, like plaintiff, were unable to obtain fingerprint card clearance.

91.     Defendant has no legitimate non-discriminatory reason or basis for imposing administrative leave on plaintiff and removing him from the campus.

92.     Defendant's racial harassment created a racially hostile environment in that it was sufficiently severe that would interfere with the educational program of a reasonable person of the same age and race of plaintiff.

93.     Defendant, at multiple points, had notice of the problem and failed to adequately redress the racially hostile environment.

94.     As a result of defendant's actions plaintiff has been damaged.

COUNT V
BREACH OF CONTRACT
(Defendant MCASOM)

95.     Plaintiff incorporates all prior paragraphs as if fully set forth herein.

96.     Plaintiff paid MCASOM sums of money for this education, and in return, MCASOM contracted to provide Plaintiff with access to its medical degree program.

97.    The relationship between the parties is contractual in nature, and each party owes the other certain duties, some of which can be found in MCASOM's written policies, acceptance letters, enrollment documents and student handbooks.

98.    MCASOM breached it contract with plaintiff in various ways including but not limited to: (1) employing a discipline not authorized by the contract to summarily remove plaintiff from the school and placing him on administrative leave and, (2) failing to afford plaintiff contractual due process rights to challenge the defendant's improper action.

99.    As a result of that breach, Plaintiff has been harmed, suffering direct and consequential damages.

## COUNT VI
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
(Against MCASOM)

100.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

101.    Every contract contains within it an implied covenant of good faith and fair dealing.

102.    MCASOM breached that covenant by exceeding the limits of reasonableness as alleged above, thereby exercising its contractually vested discretion in a manner that thwarted Plaintiff's reasonable expectations as to the essence of the contract.

103.    As a direct and proximate result of that breach Plaintiff had been damaged.

## COUNT SEVEN
### 42 U.S.C. § 1981
### EQUAL RIGHTS UNDER THE LAW – RACIAL DISCRIMINATION
(Against MCASOM)

104.    Plaintiff incorporates all prior paragraphs as if fully set forth herein.

13

105. 42 U.S.C. § 1981 in relevant part requires that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

106. 42 U.S.C. § 1981 protects the African American student's "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

107. MCASOM's policies establish the parties' contractual rights.

108. MCASOM's policies represent a contractual commitment to Plaintiffs.

109. As an African American student, Plaintiff is a member of a protected class.

110. Plaintiff is qualified to attend MCASOM as a medical student.

111. Plaintiff suffered adverse actions in that he was deprived of various contractual rights, including the right to not be summarily ejected from classes and placed on administrative leave.

112. Upon information and belief defendant did not subject similarly situated non-minority students to adverse actions.

113. Upon information and belief at least one non-minority student was found guilty of multiple DUI's during his tenure at MCASOM and was not summarily ejected from classes and placed on administrative leave. This student was allowed to graduate.

114. Upon information and belief other non-minority students in Plaintiff's class also had not received their AZDPS fingerprint cards before the course started.

14

115.   Upon information and belief, none of the other non-minority students were even disciplined by MCASCOM.

116.   Plaintiff's race was a "but for" cause of the adverse action taken against him.

117.   Based upon the forgoing, as a direct and proximate result of the Defendant's conduct as alleged above, plaintiff has been damaged and his career prospects, earning potential, and reputation have been severely harmed, and he may have suffered loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

118.   Thus, Plaintiff is entitled to all legal and equitable remedies available including all applicable damages, prejudgment interest, attorneys' fees pursuant 42 USC sec 1988 and on any other applicable basis, costs, and other compensation in an amount to be determined upon the trial of this action.

119.   Defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights.  As a result plaintiff is entitled to punitive damages.


JURY DEMAND

1.   Plaintiff demands a trial by jury.

WHEREFORE, the Plaintiff requests that this Court enter judgment against defendants as follows:

A.    Declaring that Defendant MCASOM's conduct violated Title VI of the Civil Rights Act of 1964, and 42 USC sec 1981;

B.    Ordering defendant to remove all evidence of the administrative leave from his academic record;

C.    Awarding Plaintiff compensatory damages in an amount to be proven at trial;

D.    Awarding Plaintiff punitive damages in an amount sufficient to deter defendants from such conduct in the future;

E.    Awarding Plaintiff his attorney's fees and costs pursuant to 42 USC 1988, ARS 12-341.01 and/or under any other applicable provision; and

F.    Granting such other and further relief as is just and proper.

Dated this 22nd day of April 2024.

BIHN & McDANIEL, P.L.C.

Martin A. Bihn
*Co-Counsel for Plaintiff*

**TAYLOR & GOMEZ, LLP**

/s/ Benjamin Taylor

Benjamin Taylor
*Co-Counsel for Plaintiff*

**Law Office Of Michael Eskander, P.L.C.**

/s/ Michael S. Eskander

Michael S. Eskander
*Co-Counsel for Plaintiff*

16

CLERK OF THE SUPERIOR COURT
APR 2 4 2024 FILED
4:12pm
D. Araujo, Deputy

1   **TAYLOR & GOMEZ, LLP**
2   Benjamin Taylor, SBN: 023868
    2600 North 44th Street, Suite B-101
3   Phoenix, Arizona 85008
    Phone: 602-403-0212 Fax: 602-957-3257
4   E-mail: bt@taylorgomezlaw.com
5
    **BIHN & McDANIEL, P.L.C.**
6   2600 N. Central Ave, Suite 1775
7   Phoenix, Arizona 85004
    (602) 248 9779
8   Martin A. Bihn (014338)
    mbihn@phxlegal.com
9
10  **Law Office Of Michael Eskander, P.L.C.**
    Michael S. Eskander, J.D., L.L.M.
11  (480) 491-4400
12  1921 South Alma School
    Suite 310
13  Mesa, Arizona 85210
    michael@eskanderlaw.com
14  Counsel for Plaintiff
15
                **SUPERIOR COURT OF THE STATE OF ARIZONA**
16
                **IN AND FOR THE COUNTY OF MARICOPA**
17
18  David Yacoub,                          No.   CV 2024-009759

19                       Plaintiff,        **MOTION FOR RULE 5.4 ARCP**
                                           **RELIEF (SEALING RECORDS)**
20         vs.

21  Mayo Clinic, a foreign non-profit
    corporation d/b/a Mayo Clinic Alix
22  School of Medicine; Krystal Renszel;
    Denise Dupras; and Ryan Chadha
23
24                       Defendant.
25
26
27

1
2
3   Plaintiff moves for relief pursuant to Rule 5.4 ARCP to either seal the case or,
4   preferably, be authorized to proceed under a pseudonym.[1]  Plaintiff is a second year medical
5   student. In 2022 plaintiff was assaulted and robbed by a group of assailants late at night in
6   Old Town Scottsdale.   Responding police arrested the assailants along with Plaintiff.
7   Plaintiff was released the next day.  Plaintiff was recognized as the crime victim and no
8   charges were ever brought against him. Plaintiff filed a petition in this court to seal the
9   police records and that petition was granted.

10       Plaintiff's medical school, the defendant in this case, continued to insist that plaintiff
11   was under "police investigation."  Defendant violated its own policies (as set forth in the
12   complaint) and placed plaintiff on administrative leave.  Defendant's decision was based, in
13   part, because it believed plaintiff had not proven to the defendant's satisfaction that he was
14   not under criminal investigation.  Defendant's decision to place plaintiff on administrative
15   leave is the subject of this lawsuit. Plaintiff has been able to return to his studies, but the
16   record of the administrative leave remains on his school record.

17       This case challenging the administrative leave is critically important to plaintiff and
18   his career.  If the unwarranted and illegal leave remains on his record, it will prejudice his
19   ability to match for a post graduate residency.  Next year plaintiff will begin the process of
20   applying for residencies.  Residency requires a uniform application submitted by all medical
21   students to the National Residency Match Board (NRMP).  The NRMP matches students to
22   residency programs.  A portion of the NRMP application is prepared by the medical school.
23
24
25
26

27  [1] Because this motion involves a complaint that has yet to be served, plaintiff has not attempted to contact defendants to determine if the oppose proceeding under seal.  Plaintiff is not able to advise the court whether defendants would oppose the motion in compliance with Rule 5.4(d)(2)

In this case, plaintiff anticipates defendant school will provide a lesser recommendation of plaintiff due to the leave and may well disclose it in the NRMP process.

Plaintiff has also recently filed a petition for a declaration for clearance pursuant to A.R.S. 13-4051 relating to the events in Scottsdale. The evidentiary hearing is set for Friday April 26, 2024. Plaintiff anticipates success in that matter and will move to seal that matter as well.

Plaintiff meets the requirements of Rule 5.4 ARCP for relief.

A. Plaintiff has an overriding interest that supports filing the document under seal and overcomes the public access to it.

Plaintiff has been victimized at least twice by the events in Scottsdale. He was beaten and robbed and then defendant has used that fact as a cudgel against him and may cripple his medical career because of it. Plaintiff has already obtained the superior court's order sealing the police matter and is now moving for clearance under ARS 13-4051. Rule 5.4 relief is necessary to preserve the confidentiality he has already obtain and is likely to receive from ARS 13-4051 matter.

But more to the point, if and when plaintiff prevails in this case the discipline based on the incident will be removed from his school record. Nevertheless this court will still contain a public record of the administrative leave which can prejudice plaintiff's residency application process and impair his ability to land a medical position thereafter.

B. A substantial probability exists that plaintiff will be prejudiced if he does not receive Rule 5.4 relief.

In short, plaintiff has sealed the arrest information in with a Superior Court order. He will shortly have the arrest record sealed in the DPS database. Plaintiff is also likely to

have it removed from his academic record.  All that work can be undone and plaintiff will be prejudiced if it remains a public matter in this case.

    C. The proposed restriction on public access is no greater than necessary to preserve the confidentiality of plaintiff's information.

Plaintiff proposed restriction is sealing the case, or alternatively, proceeding under a pseudonym. In light of plaintiff's other efforts to preserve confidentiality of

    D. No reasonable, less restrictive alternative exists to preserve the confidentiality of plaintiff's information.

Other than perhaps redacting plaintiff's name and all references to the Scottsdale matter in all documents no less restrictive alternatives exist to allowing plaintiff to proceed under a "John Doe" pseudonym.

For all of the foregoing reasons plaintiff requests that the court grant him Rule 5.4 relief and seal the case or allow him to prosecute the case using a pseudonym.

Dated this 24nd day of April 2024.

BIHN & MCDANIEL, P.L.C.

Martin A. Bihn
*Co-Counsel for Plaintiff*

**TAYLOR & GOMEZ, LLP**

/s/ Benjamin Taylor

Benjamin Taylor
*Co-Counsel for Plaintiff*

**Law Office Of Michael Eskander, P.L.C.**

4

1

2

3

4

5

/s/ Michael S. Eskander

Michael S. Eskander
*Co-Counsel for Plaintiff*

5

Clerk of the Superior Court
*** Electronically Filed ***
K. Higuchi-Mason, Deputy
6/4/2024 12:57:07 PM
Filing ID 17930443

**TAYLOR & GOMEZ, LLP**
Benjamin Taylor, SBN: 023868
2600 North 44th Street, Suite B-101
Phoenix, Arizona 85008
Phone: 602-403-0212 Fax: 602-957-3257
E-mail: dg@taylorgomezlaw.com

**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com

**Law Office Of Michael Eskander, P.L.C.**
Michael S. Eskander, J.D., L.L.M.
(480) 491-4400
1921 South Alma School
Suite 310
Mesa, Arizona 85210
michael@eskanderlaw.com
Counsel for Plaintiff

## SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| D. Y.<br><br>                    Plaintiff,<br><br>    vs.<br><br>Mayo Clinic, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine; Krystal Renszel; Denise Dupras; and Ryan Chadha<br><br>                    Defendant. | No.  CV2024-009759<br><br>**ACCEPTANCE OF SERVICE ARCP RULE 4(f)(2)** |

The person who signed below makes these statements under oath:

1   I, _Allen F. James_ acknowledge that I have voluntarily accepted a copy of the

2   following legal papers:

3

4   Summons

5   Complaint

6

7   I am defendant Denise Dupras' attorney and authorized agent and I waive formal

8   service of process (personal service), and understand by accepting these papers, it is the same

9   as if defendant Denise Dupras were personally served under Arizona Law.

10

11   _6/4/24_

12   Date

    Signature of Person Accepting Service

13

14   Allen F. James

15   Printed Name of Person Accepting Service

16

17   STATE OF Missouri

18   COUNTY OF Jackson

19

20   Subscribed and sworn to or affirmed before me this: June 4, 2024   by
                                                        (date)

21   Melissa A. Gingell.

22

23

24

25   (Notary seal)                     Deputy Clerk or Notary Public

26

27
    ```
    MELISSA A. GINGELL
    Notary Public-Notary Seal
    STATE OF MISSOURI
    Commissioned for Jackson County
    My Commission Expires: July 14, 2027
    ID #15425103
    ```
                                        2

Clerk of the Superior Court
*** Electronically Filed ***
M. De La Cruz, Deputy
6/4/2024 12:53:56 PM
Filing ID 17930415

1
2
3
4
5

**TAYLOR & GOMEZ, LLP**
Benjamin Taylor, SBN: 023868
2600 North 44th Street, Suite B-101
Phoenix, Arizona 85008
Phone: 602-403-0212 Fax: 602-957-3257
E-mail: dg@taylorgomezlaw.com

6
7
8
9

**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com

10
11
12
13
14

**Law Office Of Michael Eskander, P.L.C.**
Michael S. Eskander, J.D., L.L.M.
(480) 491-4400
1921 South Alma School
Suite 310
Mesa, Arizona 85210
michael@eskanderlaw.com
Counsel for Plaintiff

15

## SUPERIOR COURT OF THE STATE OF ARIZONA

16
17

## IN AND FOR THE COUNTY OF MARICOPA

18
19
20
21
22
23
24

| | |
|---|---|
| D. Y.<br><br>                     Plaintiff,<br><br>    vs.<br><br>Mayo Clinic, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine; Krystal Renszel; Denise Dupras; and Ryan Chadha<br><br>                     Defendant. | No.  CV2024-009759<br><br>**ACCEPTANCE OF SERVICE ARCP RULE 4(f)(2)** |

25
26
27

The person who signed below makes these statements under oath:

1    I, _Allen F. James_ acknowledge that I have voluntarily accepted a copy of the

2    following legal papers:

3

4        Summons

5        Complaint

6

7        I am defendant Ryan Chadha's attorney and authorized agent and I waive formal

8    service of process (personal service), and understand by accepting these papers, it is the same

9    as if defendant Ryan Chadha were personally served under Arizona Law.

10

11   _6/4/24_

12   Date                                    Signature of Person Accepting Service

13

14                                           _Allen F. James_

15                                           Printed Name of Person Accepting Service

16

17   STATE OF Missouri

18   COUNTY OF Jackson

19

20   Subscribed and sworn to or affirmed before me this: _June 4, 2024_ by
                                                              (date)
21   _Melissa A. Gingell_          .

22

23

24

25                                           Deputy Clerk or Notary Public

26   (Notary seal)

     ```
     MELISSA A. GINGELL
     Notary Public-Notary Seal
     STATE OF MISSOURI
     Commissioned for Jackson County
     My Commission Expires: July 14, 2027
     ID #15425103
     ```
27

                                    2

Clerk of the Superior Court
*** Electronically Filed ***
L. Martinez, Deputy
6/4/2024 1:06:12 PM
Filing ID 17930508

**TAYLOR & GOMEZ, LLP**
Benjamin Taylor, SBN: 023868
2600 North 44th Street, Suite B-101
Phoenix, Arizona 85008
Phone: 602-403-0212 Fax: 602-957-3257
E-mail: dg@taylorgomezlaw.com

**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
(602) 248 9779
Martin A. Bihn (014338)
mbihn@phxlegal.com

**Law Office Of Michael Eskander, P.L.C.**
Michael S. Eskander, J.D., L.L.M.
(480) 491-4400
1921 South Alma School
Suite 310
Mesa, Arizona 85210
michael@eskanderlaw.com
Counsel for Plaintiff

## SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| D. Y.<br><br>              Plaintiff,<br><br>vs.<br><br>Mayo Clinic, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine; Krystal Renszel; Denise Dupras; and Ryan Chadha<br><br>              Defendant. | No.  CV2024-009759<br><br>**ACCEPTANCE OF SERVICE ARCP RULE 4(f)(2)** |

The person who signed below makes these statements under oath:

I, Allen F. James acknowledge that I have voluntarily accepted a copy of the following legal papers:

Summons

Complaint

I am defendant Krystal Renszel's attorney and authorized agent and I waive formal service of process (personal service), and understand by accepting these papers, it is the same as if defendant Krystal Renszel were personally served under Arizona Law.

6/4/24
Date

_C. G._ (signature)
Signature of Person Accepting Service

Allen F. James
Printed Name of Person Accepting Service

STATE OF Missouri

COUNTY OF Jackson

Subscribed and sworn to or affirmed before me this: 4th day of June 2024 by
(date)

Melissa A. Gingell .

(Notary seal)

Melissa A. Gingell
Deputy Clerk or Notary Public

MELISSA A. GINGELL
Notary Public-Notary Seal
STATE OF MISSOURI
Commissioned for Jackson County
My Commission Expires: July 14, 2027
ID #15425103

2

NSI, LLC
3956 E. El Sendero
Cave Creek, Arizona 85331
(602) 316-5948

CLERK OF THE
SUPERIOR COURT
RECEIVED NE
DOCUMENT DEPOSITORY

2024 JUN -6  AM 9: 03
FILED
BY E. GUERRERO, DEP

## IN THE SUPERIOR COURT OF MARICOPA COUNTY

### STATE OF ARIZONA

| | |
|---|---|
| **D. Y.**<br><br>**Plaintiff(s)**<br><br>vs.<br><br>**MAYO CLINIC, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine, et al.**<br><br>**Defendant(s)** | **CASE NO.  CV2024-009759**<br><br>**CERTIFICATE OF  SERVICE**<br><br>**MAYO CLINIC, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine** |

GARY L. JONES, being first duly sworn, hereby states: He is fully qualified to serve process in this cause, having been so appointed by the Court; that served copies of the Summons and Complaint upon **MAYO CLINIC**, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine at the time, in the manner and place set forth below:

On June 6, 2024 at approximately _8:21_ am, copies of the above referenced documents were given to Janelle Wright, who said she was authorized to accept service on behalf of Peter Galindez, the statutory agent for **MAYO CLINIC**, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine  at 13400 East Shea Blvd in Scottsdale Az. I advised Ms. Wright that (i) the documents were legal documents and (ii) **MAYO CLINIC**, a foreign non-profit corporation d/b/a Mayo Clinic Alix School of Medicine was being legally served.  I then turned and politely left the premises.

I swear under penalty of perjury the forgoing statements are believed to be true and correct.

Dated: June 6, 2024

_Gary L. Jones_
Gary L. Jones
Lic. Process Server No. 7789