IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe,<br><br>        Plaintiff,<br><br>v.<br><br>Mayo Clinic, et al.,<br><br>        Defendants. | No. CV-24-01540-PHX-ESW<br><br>**ORDER** |

The Court has reviewed Defendants' "Motion to Dismiss the First Amended Complaint" (Doc. 25), Plaintiff's Response (Doc. 30), and Defendants' Reply (Doc. 33). For the reasons set forth below, Defendants' Motion (Doc. 25) will be granted.  The Court will grant Plaintiff leave to file a Second Amended Complaint.

## I.  BACKGROUND

Plaintiff is an African American second-year medical student at Defendant Mayo Clinic Alix School of Medicine ("MCASOM"). (Doc. 22 at ¶¶ 1, 13.)  MCASOM has a committee called the Student Promotion and Assessment Review Committee ("SPARC") that oversees and disciplines medical students. (*Id.* at ¶ 28.) SPARC is comprised of over twenty MCASOM instructors.  (*Id.* at ¶ 29.)  Defendants Dupras, Renszel, and Chadha are MCASOM employees who serve as chair and vice-chairs of SPARC. (*Id.* at ¶¶ 4-7, 29, 81.)

In August 2022, Plaintiff was assaulted and robbed while out with a friend in Scottsdale, Arizona. (*Id.* at ¶¶ 14-15.) Plaintiff was arrested but released the next day without being charged as authorities determined that Plaintiff was the victim. (*Id.* at ¶¶ 16-20.) On August 8, 2022, MCASOM informed Plaintiff that it had been contacted by the police who sought to confirm Plaintiff's enrollment. (*Id.* at ¶ 21.) Pursuant to MCASOM's request, Plaintiff provided a copy of the police report, which detailed that Plaintiff had been assaulted and robbed. (*Id.* at ¶ 27.) MCASOM interviewed Plaintiff regarding the incident. (*Id.* at ¶ 26.)

In November 2022, SPARC issued Plaintiff a Formal Non-Academic Warning for alleged violations of MCASOM policies. (*Id.* at ¶ 30.) The remediation plan required Plaintiff not to violate any MCASOM policy from October 19, 2022 through October 31, 2023, or face further disciplinary action. (*Id.*)

In December 2022, Plaintiff and other students were notified that they must obtain an Arizona Department of Public Safety ("AZDPS") fingerprint clearance card for a psychiatry rotation scheduled to begin on April 10, 2023. (*Id.* at ¶¶ 31-34.) Plaintiff submitted his fingerprints to AZDPS in February 2023, but the card was delayed. (*Id.* at ¶¶ 34-36.) The psychiatry instructor made alternative arrangements for Plaintiff and at least four other affected students to complete psychiatry interviews. (*Id.* at ¶ 42.) Plaintiff passed the Introduction to Psychiatry course and "received a stellar interview evaluation." (*Id.* at ¶ 43.)

On April 24, 2023, SPARC summoned Plaintiff to a meeting that included Defendants Renszel, Dupras, and Chadha. (*Id.* at ¶ 44.) At the meeting, Plaintiff was served with a letter signed by Defendants Renszel, Dupras, and Chadha that placed him on administrative leave. (*Id.* at ¶¶ 46, 56.) The letter cited Plaintiff's alleged failure to timely obtain the fingerprint card, inability to complete the psychiatry rotation, and an "apparent active police investigation" related to the August 2022 incident. (*Id.* at ¶ 57.) Plaintiff was escorted off campus and his access to classes and facilities was terminated. (*Id.* at ¶¶ 60-62.)

1    On June 22, 2023, Plaintiff received a letter from MCASOM, informing him that he had successfully completed his remediation plan and that his administrative leave was removed effective June 21, 2023. (*Id.* at ¶ 71.)  Plaintiff resumed coursework in August 2023. (*Id.* at ¶ 73.)  Plaintiff alleges that the 16-week interruption in his coursework caused him to fall behind his peers.  (*Id.* at ¶ 76.)

The First Amended Complaint (Doc. 22) asserts claims against Defendants Renszel, Dupras, and Chadha for false light and defamation, against MCASOM for violation of Title VI of the Civil Rights Act of 1964, breach of contract, breach of the implied covenant of good faith and fair dealing, and racial discrimination under 42 U.S.C. § 1981.  Plaintiff seeks punitive damages against the individual Defendants. (*Id.* at 11-18.)

## II.  LEGAL STANDARDS

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  The court may dismiss all or part of a complaint sua sponte if the plaintiffs' claims lack an arguable basis in either fact or law.  *See Neitzke v. Williams,* 490 U.S. 319, 327-28 (1989); *see also* 28 U.S.C. § 1915(e)(2).  This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of legal interest which clearly does not exist).  *Id.*; *see also McKeever v. Block,* 932 F.2d 795, 798 (9th Cir. 1991).

To survive a Rule 12(b)(6) motion to dismiss, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In determining whether the complaint states a claim on which relief may be granted, its allegations of material fact must be taken as true and construed in the light most favorable to Plaintiffs. *See Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).

If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. *Lopez v. Smith,* 203

F.3d 1122, 1127 (9th Cir. 2000). If, after careful consideration, it is clear that a complaint cannot be cured by amendment, the Court may dismiss without leave to amend. *See Cato v. United States,* 70 F.3d 1103, 1106 (9th Cir. 1995); *Lipton v. Pathogenesis Corp.,* 284 F.3d 1027, 1039 (9th Cir. 2002) (holding that "[b]ecause any amendment would be futile, there was no need to prolong the litigation by permitting further amendment").

### III.  DISCUSSION

**A.  Plaintiff's Rule 10(a) Violation by Filing Under the Pseudonym "John Doe"**

Defendants' Motion to Dismiss (Doc. 25) first asserts that the First Amended Complaint should be dismissed for Plaintiff's violation of Federal Rule of Civil Procedure 10(a). Rule 10(a) requires that the "title of the complaint must name all the parties."

Plaintiff initially filed this matter in the Superior Court of Arizona. The record reflects that Plaintiff moved the Superior Court to either seal the case or, alternatively, grant Plaintiff leave to proceed under the pseudonym "John Doe." (Doc. 1-1 at 38-42.) Although the Clerk of the Superior Court redacted Plaintiff's name and substituted the pseudonym "John Doe" when docketing the original Complaint (Doc. 1-1 at 5), Defendants correctly recount that the Superior Court docket does not reflect that a state court judge ruled on Plaintiff's motion. (Doc. 25 at 6-7.) After Defendants removed the matter to this Court, Plaintiff did not notice the state court motion for resolution by this Court as required by Local Rule of Civil Procedure 3.6(d).

The Ninth Circuit has recognized that plaintiffs may proceed anonymously in the "unusual case" where necessary to "protect a person from harassment, injury, ridicule or personal embarrassment." *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir. 2000). Yet the plaintiff bears the burden of demonstrating that the need for anonymity outweighs the prejudice to the opposing party and the public's interest in knowing the party's identity. *Id.*; *see also Doe v. Amazon, Inc.*, 2011 WL 13073281, at *5 (W.D. Wash. 2011) (dismissing complaint filed under pseudonym and allowing plaintiff 14 days leave to amend to add real name where plaintiff had not sought leave to proceed under pseudonym).

- 4 -

Here, Plaintiff has not noticed his state court motion in this Court or otherwise sought leave from this Court to proceed anonymously. Dismissal of Plaintiff's First Amended Complaint is therefore warranted based on his failure to comply with Rule 10(a). Further, as explained below, the Court finds that Counts One, Four, and Seven are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

**B. Count One: False Light Claim Against Defendants Renszel, Dupras, and Chadha**

In Count One, Plaintiff alleges a false light invasion of privacy claim against Defendants Renszel, Dupras, and Chadha. (Doc. 22 at 11-12.) Defendants move to dismiss Plaintiff's false light claim in Count One, arguing that Plaintiff fails to allege the requisite element of "publicity." (Doc. 25 at 7-8.)

"To establish a claim for false light invasion of privacy, a plaintiff must show (1) the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light, and (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person in the plaintiff's position." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 450 (Ariz. App. 2015). "Publicity" in the context of a false light claim "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge." *Hart v. Seven Resorts Inc.*, 947 P.2d 846, 854 (Ariz. App. 1997) (emphasis omitted) (quoting Restatement (Second) of Torts).

Here, Plaintiff's false light claim is based entirely on allegations that Defendants Renszel, Dupras and Chadha shared purportedly false information about Plaintiff with other members of SPARC. (Doc. 22 at ¶¶ 81-86.) The Court concurs with Defendants that internal disclosure to a faculty committee is not "publicity." (Doc. 25 at 8.); *see Unknown Party v. Ariz. Bd. of Regents*, CV-18-01623-PHX-DWL, 2019 WL 7282027, at *18 (D. Ariz. 2019) (finding that "[i]n a college setting, even dissemination of private information to twenty college students is not enough to satisfy the publicity requirement for a false light

- 5 -

claim"). The Court finds that the First Amended Complaint fails to plead the requisite "publicity" for a false light claim. Accordingly, Defendants' request to dismiss Count One under Federal Rule of Civil Procedure 12(b)(6) is granted.

### C. Count Two: Defamation Claim Against Defendants Dupras, Renszel, and Chadha

Count Two of the First Amended Complaint alleges that SPARC members Defendants Dupras, Renszel, and Chadha made false and defamatory statements about Plaintiff and published them to twenty-one MCASOM physicians sitting on the SPARC committee. (Doc. 22 at ¶ 91.) Plaintiff contends that the false statements are that Plaintiff "was responsible for a failing to obtain fingerprint clearance, failed to complete an introductory course and remained under apparent police investigation." (*Id.* at ¶ 96.)

To be defamatory under Arizona law, "a publication must be false and must bring the defamed person into disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or reputation." *Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781, 787 (Ariz. 1989). "Substantial truth is an absolute defense to a defamation action in Arizona." *Read v. Phoenix Newspapers, Inc.*, 819 P.2d 939, 941 (Ariz. 1991). In addition, "communication between two agents of the same principal is a publication for defamation purposes subject to qualified privilege." *Dube v. Likins*, 167 P.3d 93, 105 (Ariz. App. 2007). "Once a defendant demonstrates that a conditional privilege may apply, the plaintiff may then prove an abuse of that privilege either by proving publication with 'actual malice' or by demonstrating excessive publication." *Green Acres Tr. v. London*, 688 P.2d 617, 624 (Ariz. 1984). "Malice is established by showing that [the defendant] acted in reckless disregard of the truth, or with actual knowledge that [his or her] statements were false." *Aspell v. Am. Cont. Bridge League of Memphis, Tenn.*, 122 Ariz. 399, 401 (Ariz. App. 1979). If the plaintiff does not allege that the defendant abused his or her qualified privilege, then the court may dismiss the claim on qualified privilege grounds. *See Thompson v. Fin. Regs., Inc.*, No. CV-11-382-PHX-GMS, 2011 WL 5037028, at *4 (D. Ariz. Oct. 24, 2011).

To reiterate, Plaintiff alleges that Defendants falsely stated that he (i) was responsible for failing to timely obtain fingerprint clearance; (ii) failed to complete the Intro to Psychiatry course; and (iii) remained under "apparent active police investigation." (Doc. 22 at ¶ 96.) Regarding the first statement, Plaintiff alleges that he submitted his fingerprint request seven weeks before the April 2023 psychiatry rotation, within the 4-6 week timeframe MCASOM told students to expect. (Doc. 30 at 8; Doc. 22 at ¶¶ 32, 34.) He also alleges that MCASOM knew other students faced AZDPS processing delays. (Doc. 22 at ¶ 41.)

As to the second statement, Plaintiff alleges that he *did* complete and pass Intro to Psychiatry. (Doc. 22 at ¶¶ 42-43.) Finally, as to the third statement, Plaintiff alleges that he was the victim in the incident that prompted the police investigation, no charges were filed, and he informed MCASOM that there was no active investigation before SPARC served the April 2023 letter placing him on administrative leave. (*Id.* at ¶¶ 20-27.) Plaintiff also provided MCASOM with a copy of the police report. (*Id.* at ¶ 27.)

In moving to dismiss Count Two, Defendants argue that the allegedly defamatory statements were substantially true or protected by qualified privilege. (Doc. 25 at 9.) However, at this stage the Court must take Plaintiff's factual allegations as true and draw reasonable inferences in his favor. Plaintiff pleads facts suggesting the statements contained in SPARC's April 2023 letter placing him on administrative leave were false. Plaintiff also alleges that Defendants knew of the falsity due to their access to his academic records and his direct statements to them, which supports actual malice to overcome privilege. (Doc. 22 at ¶¶ 58-59, 70.) The Court finds that Plaintiff has pled a plausible defamation claim. Therefore, Defendants' request to dismiss Count Two under Federal Rule of Civil Procedure 12(b)(6) is denied.

**D. Count Three: Punitive Damages Against Defendants Dupras, Renszel, and Chadha**

In Count Three, Plaintiff seeks punitive damages against the individual defendants, alleging that their conduct was "outrageous, oppressive, or intolerable, and created a substantial risk of tremendous harm, thereby evidencing a conscious and deliberate

1 disregard of the interests and rights of Plaintiff." (Doc. 22 at ¶ 100.)

2 Defendants argue that Count Three should be struck because punitive damages are a remedy, not an independent cause of action. (Doc. 25 at 11 n.3.) Defendants are correct that, under Arizona law, punitive damages are a form of relief, not a separate claim. *Sisemore v. Farmers Ins. Co.*, 779 P.2d 1303, 1306 (Ariz. App. 1989) (judgment rejecting plaintiffs' request for punitive damages not appealable because such request "is not a separate claim for relief under Rule 54(b)"). Count Three of the First Amended Complaint is stricken. If Plaintiff chooses to file a Second Amended Complaint, he may include a request for punitive damages as part of his prayer for relief, but he may not assert punitive damages as a standalone claim.

### E.  Count Four: Title VI Claim Against Defendant MCASOM

In the Title VI claim presented in Count Four, Plaintiff alleges that Defendants intentionally discriminated against him based upon his race and national origin, stating that he is African American of Egyptian and Ethiopian descent. (Doc. 22 at 14-15.) Defendants argue that Plaintiff fails to plead facts giving rise to an inference of discriminatory intent or necessary to establish institutional liability. (Doc. 25 at 11.)

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. A Title VI claimant must prove intentional discrimination. *Yu v. Idaho State Univ.*, 15 F.4th 1236, 1242 (9th Cir. 2021) (citing *Alexander v. Sandoval*, 532 U.S. 275, 280–81 (2001)). Title VI's statutory prohibition on discrimination is grounded in the Equal Protection Clause. *Grutter v. Bollinger*, 539 U.S. 306, 343-44 (2003) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) ("Title VI . . . proscribe[s] only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment."). The Ninth Circuit applies the burden shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to claims alleging discriminatory treatment under Title VI. *Rashdan v. Geissberger*, 764 F.3d 1179, 1182

(9th Cir. 2014). Under *McDonnell Douglas*,

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [student's] rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Id.* (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)) (internal citations and quotation marks omitted).

Here, while Plaintiff alleges that he is African American and was placed on administrative leave, he pleads no facts plausibly suggesting that the leave decision was motivated by his race. As Defendants note (Doc. 25 at 11-12), Plaintiff does not allege any direct evidence of discriminatory intent, such as race-based comments or references by Defendants. Instead, he merely asserts that "[u]pon information and belief, similarly-situated non-African Americans were not singled out for discipline even though they, like Plaintiff, were unable to obtain fingerprint card clearance." (Doc. 22 at ¶ 107.) Plaintiff does not plead any facts about those students, such as whether they were otherwise similarly situated in terms of their disciplinary history and academic status. As mentioned, Plaintiff was already in a Formal Non-Academic Warning status at the time of the fingerprinting issue. (Doc. 22 at ¶ 30.)

Plaintiff also broadly alleges that:
> Upon information and belief, other MCASOM medical students have been arrested, charged, and even convicted of serious crimes and were allowed to graduate. Specifically, upon information and belief, at least one non-minority student was found guilty of multiple DUIs during his tenure at MCASOM, and he was never placed on administrative leave, and was ultimately allowed to graduate.

(*Id.* at ¶¶ 67-68.) However, these vague allegations lack any specifics about the circumstances of the students' misconduct and whether it resulted in similar academic

issues as Plaintiff's. The Court grants Defendants' request to dismiss Count Four under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Rashdan v. Geissberger*, 764 F.3d 1179, 1183 (9th Cir. 2014) ("Rashdan's indirect evidence of allegedly similarly situated students who were permitted to graduate also fails to establish a prima facie case of discriminatory animus. Rashdan offers grades, clinical competency ratings, and faculty comments for certain students whom she claims performed as well or worse than she did, but Rashdan offers no context to evaluate this data. A laundry list of scores proves nothing in the absence of context or explanation.").

### F. Counts Five and Six: Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing Claims Against Defendant MCASOM

Defendants move to dismiss Plaintiff's breach of contract claims in Counts Five and Six. (Doc. 25 at 14-16.)

To state a claim for breach of contract under Arizona law, a plaintiff must allege that: "(1) a contract exists between the plaintiff and the defendant; (2) the defendant breached the contract; and (3) the breach resulted in damage to the plaintiff." *Dylan Consulting Services LLC v. SingleCare Services LLC*, 2018 WL 1510440, at *2 (D. Ariz. Mar. 27, 2018).

The First Amended Complaint asserts that Plaintiff's relationship with MCASOM is "contractual in nature, and each party owes the other certain duties, some of which can be found in MCASOM's written policies, acceptance letters, enrollment documents, and student handbooks." (Doc. 22 at ¶ 114.) The First Amended Complaint alleges that MCASOM's "Learner Professional Conduct Policy states that 'learner action inconsistent with these standards may result in a formal warning, probation, or dismissal'" and that the "policy does not mention an administrative leave option." (*Id.* at ¶ 49.)

The First Amended Complaint further alleges that "MCASOM breached its Learner Professional Conduct Policy and its Deficiencies and Unsatisfactory Progress Policy by employing a disciplinary action not authorized by either of those policies and summarily removing Plaintiff from school under the guise of a non-existent administrative leave option." (*Id.* at ¶ 115.) Plaintiff asserts that "MCASOM's failure to employ the disciplinary

options and procedures outlined in its own policies deprived Plaintiff of his right to appeal the disciplinary action as outlined in MCASOM's Warning, Probation, Dismissal & Appeal Policy and Procedure." (*Id.* at ¶ 116.) Plaintiff alleges that as a result of the breach, Plaintiff has suffered direct and consequential damages. (*Id.* at ¶ 117.)

Defendants argue that even assuming that MCASOM's disciplinary policies are contractual in nature, the policies Plaintiff cites do not create a contractual duty that prohibited MCASOM from placing Plaintiff on administrative leave. (Doc. 25 at 15.) Defendants contend the language in the Learner Professional Conduct Policy stating that violations "may result in a formal warning, probation, or dismissal" is permissive and does not preclude other forms of discipline. (*Id.*) Similarly, Defendants assert that MCASOM's written policies do not foreclose the use of other disciplinary measures, such as administrative leave. (*Id.* at 16.)

The Court agrees with Plaintiff that Defendants' arguments pertain to the *merits* of Plaintiff's breach of contract claims rather than whether the claims have been sufficiently *pleaded*. (Doc. 30 at 13.) Defendants' request that the Court dismiss Counts Five and Six for failure to state a claim is denied. *See USI Ins. Servs. LLC v. Alliant Ins. Servs. Inc.*, No. CV-23-00192-PHX-SMB, 2023 WL 8600810, at *6 (D. Ariz. Dec. 12, 2023) ("dismissal based on contract interpretation is not within the realm of a 12(b)(6) motion").

**G. Count Seven: Claim Under 42 U.S.C. § 1981 Against Defendant MCASOM**

Plaintiff asserts a claim under 42 U.S.C. § 1981, alleging that Defendant MCASOM deprived him of "various contractual rights, including the right to not be summarily ejected from classes and placed on administrative leave" and that Plaintiff's race was a "but for" cause of this adverse action. (Doc. 22 at ¶¶ 130, 135.) In moving to dismiss Count Seven, Defendants assert that Plaintiff fails to plead facts plausibly suggesting racial discrimination and fails to identify an enforceable contractual right that was impaired.

Section 1981 provides relief when racial discrimination impairs a contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). To plausibly allege a § 1981 claim, a plaintiff "must show intentional discrimination on account of race."

*Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). In addition, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020).

As discussed above in the context of Plaintiff's Title VI claim in Count Four, the First Amended Complaint lacks specific factual allegations plausibly suggesting that Defendants acted with intent to discriminate against Plaintiff on the basis of his race. Plaintiff's conclusory allegations that "[u]pon information and belief" non-minority students were treated more favorably are insufficient, as Plaintiff fails to identify any similarly-situated student outside his protected class who was treated more favorably under like circumstances. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (affirming summary judgment where plaintiff "failed to identify a similarly situated Caucasian employee who was treated more favorably"). The other students referenced in the First Amended Complaint are not similarly situated to Plaintiff because they are not alleged to have engaged in misconduct while already on disciplinary warning. (Doc. 22 at ¶¶ 107, 132-133.) The Court finds that Plaintiff fails to state a Section 1981 claim. Defendants' request to dismiss Count Seven under Federal Rule of Civil Procedure 12(b)(6) is granted.

**H. Leave to Amend**

Plaintiff requests leave to amend the First Amended Complaint to correct any deficiencies found by the Court. (Doc. 20 at 2.) District courts "shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 302 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15 (a)). Courts in the Ninth Circuit are to apply this policy "with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). To that end, "a district court should grant leave to amend even if no request to amend the pleading was made . . ." *Lacey v. Maricopa Cnty.*, 639 F.3d 896, 926 (9th Cir. 2012) (internal marks and citation omitted). The Court, however, "may in its discretion deny leave to amend due to undue delay, bad faith or dilatory motive . . . ,

repeated failure to cure deficiencies . . . , undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (internal marks and citation omitted). Absent a "strong showing of any of [these] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

It is not clear to the Court that any further amendment to Plaintiff's First Amended Complaint would be futile. *See Eminence Capital*, 316 F.3d at 1052 (reasoning that dismissal with prejudice and "without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment"). The Court grants Plaintiff leave to file a Second Amended Complaint.

### IV.  CONCLUSION

Based on the foregoing,

**IT IS ORDERED** granting Defendants' Motion to Dismiss (Doc. 25) for Plaintiff's failure to comply with Federal Rule of Civil Procedure 10. The Court further finds that dismissal of Counts One, Four, and Seven is warranted under Federal Rule of Civil Procedure 12(b)(6), and the Court alternatively grants Defendants' request to dismiss to Counts One, Four, and Seven on that basis. Count Three is alternatively stricken on the basis that a request for punitive damages is a remedy, not a standalone claim. The Court does not find that Rule 12(b)(6) dismissal is warranted as to Counts Two, Five, and Six.

**IT IS FURTHER ORDERED** dismissing the First Amended Complaint without prejudice.

**IT IS FURTHER ORDERED** granting Plaintiff leave to file a Second Amended Complaint to correct the deficiencies in the First Amended Complaint that are identified herein. The Second Amended Complaint must be filed no later than **December 13, 2024**. The Clerk of Court shall enter judgment dismissing this case if Plaintiff fails to timely file a Second Amended Complaint.

**IT IS FURTHER ORDERED** that if Plaintiff seeks to file the Second Amended

Complaint under a pseudonym, then he must file the appropriate motion requesting leave to do so.

Dated this 15th day of November, 2024.

_____
Honorable Eileen S. Willett
United States Magistrate Judge